UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

COLONY INSURANCE COMPANY                    CIVIL ACTION

VERSUS                                       NO: 22-4573

EVANSTON INSURANCE COMPANY                   SECTION: "J"(4)

## ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 53)** filed by Defendant Southern Hammer and Nail Builders, LLC. Plaintiff Colony Insurance Company has filed its opposition. (Rec. Doc. 64). Defendant has filed its reply. (Rec. Doc. 66). Upon considering the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This matter concerns a construction dispute. Eric and Rebecca Frank own a residential property located at 77 Palmetto in Kenner, Louisiana. (Rec. Doc. 53-2, at 1). In February 2021, the Franks entered into a contract with general contractor Design Management Group, LLC ("DMG") so that DMG could renovate their property. *Id.*

Defendant Southern Hammer & Nail Builders, LLC entered into a subcontract with DMG in April 2021 to assist in renovating the Frank's property. Under the subcontract, Defendant had a duty to demolish a portion of the property, frame the new addition, and get the addition "watertight." *Id.* at 1–2. Defendant's subcontract

1

with DMG was set to last seven days with work to begin on April 23, 2021. *Id.* However, Defendant did not begin work until April 26. *Id.*

On May 1, DMG notified Defendant of upcoming rain and advised Defendant to place tarps as needed on the property. *Id.* Defendant installed the tarps that day. *Id.* However, on the night of May 2, wind displaced the tarps, and rainwater entered the property's first floor. *Id.* Defendant tarped the property again. *Id.* However, on May 5, strong overnight wind blew down one of the framed exterior walls of the addition, causing the tarp to collapse. (Rec. Doc. 53-8, at 19). More water then flooded the property's first floor, causing extensive damage. *Id.*

On May 10, Defendant again tarped the property. (Rec. Doc. 53-2, at 3). However, on May 11, DMG noted that "severe weather" caused the tarp to tear, and some water again entered the house. (Rec. Doc. 53-1, at 10). Following a break in the rain, Defendant repaired and reinstalled the tarp. (Rec. Doc. 53-2, at 3). Plaintiff claims that on that same day DMG notified Defendant that its work was deficient and that it was seeking a replacement roofer who could properly dry-in the property. (Rec. Doc. 64, at 17).

On May 12, DMG noted that it found a roofer that could finish framing and roofing the property and was available to start work on May 21, and that it locked him in for this date. (Rec. Doc. 64-7, at 1). Defendant resumed framing the property on May 13. (Rec. Doc. 53-1, at 13). On May 17, DMG emailed Defendant, asking it to correct alleged defects in its work and make the home addition watertight by May 19. (Rec. Doc. 53-7, at 2). DMG stated that if Defendant did not complete its work by May

19, DMG would take corrective action. *Id.* Defendant responded to DMG by email, stating that it has been unable to complete its work due to various issues including the weather, material delay, and interference from neighborhood security. (Rec. Doc. 53-7, at 3). On May 19, DMG dismissed Defendant from the project. *Id.* at 5.

Following these events, Colony Insurance Company, DMG's insurer and Plaintiff in this suit, claims that it paid $713,084 to the Franks as compensation for damages to the property that were caused by Defendant's alleged negligence, faulty workmanship, and acts or omissions. (Rec. Doc. 9, at 3). Plaintiff sued Defendant's insurer, Evanston Insurance Company, as subrogee of DMG in Louisiana state court. (Rec. Doc. 1-4, at 1). Evanston subsequently removed the suit to federal court. (Rec. Doc. 1).

Plaintiff amended its complaint to add Southern Hammer as a Defendant. (Rec. Doc. 9). Evanston filed a Motion to Dismiss all of Plaintiff's claims against Evanston (Rec. Doc. 8), which the Court granted, leaving Southern Hammer as the only remaining Defendant. (Rec. Doc. 28). Defendant now seeks summary judgment on all of Plaintiff's claims. (Rec. Doc. 53).

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When evaluating whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008) (citations omitted). The moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact. *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. When the moving party meets this burden, the non-moving party "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 325). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with "conclusory allegations" or "unsubstantiated assertions." *Id.* (citations omitted). A court ultimately must be satisfied that "a reasonable jury could not return a verdict

for the nonmoving party." *Delta*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**PARTIES' ARGUMENTS AND DISCUSSION**

Defendant offers two reasons why this Court should grant summary judgment. First, Defendant argues that the force majeure defense applies. (Rec. Doc. 53-1, at 9). Second, Defendant argues that DMG did not allow them to mitigate damages. *Id.* at 11.

### I.      Force Majeure

Defendant argues that the property damage was caused by a force majeure weather event. *Id.* at 9. Louisiana law defines a force majeure as a "superior or irresistible force" that is like the common law concept of an "act of God." *Saden v. Kirby*, 660 So.2d 423, 428 (1995). An act of God has been defined as a "providential occurrence or extraordinary manifestation of the forces of nature which could not have been foreseen and the effect thereof avoided by the exercise of reasonable prudence, diligence, and care, or by the use of those means which the situation renders reasonable to employ." *Id.* (quoting *S. Air Transp. v. Gulf Airways*, 40 So.2d 787, 791 (1949)). Louisiana law requires two circumstances to exist for a force majeure defense to apply: "(1) the accident is directly and exclusively due to natural causes without human intervention; and (2) no negligent behavior by the defendant has contributed to the accident." *Smith v. Great Am. Ins. Co.*, 20-377 (La. App. 5 Cir. 5/26/21), 325 So.3d 495, 498–99.

Defendant argues that force majeure defense applies because (1) the alleged property damages were caused directly and exclusively by a rainstorm with strong winds, and (2) Defendant exhibited no negligent action that contributed to the incident. (Rec. Doc. 53-1, at 11).

Plaintiff argues that there is a genuine factual dispute as to whether the rainstorm and wind constituted a force majeure or act of God. (Rec. Doc. 64, at 9). Plaintiff also argues that there are genuine factual disputes as to whether Defendants were negligent in failing to prevent the property damage. *Id.* at 10.

The Court agrees with Plaintiff. Louisiana courts have interpreted a force majeure or act of God as "an unusual, sudden and unexpected manifestation of the forces of nature." *Guy v. Howard Hughes Corp.*, 2018-0413 (La. App. 4 Cir. 12/19/18), 262 So.3d 327, 330 (quoting *Greene v. Fox Crossing, Inc.*, 32,744 (La. App. 2 Cir. 3/1/00) 754 So.2d 339, 343). Defendant presents insufficient evidence to indisputably establish that a South Louisiana springtime rainstorm with strong winds arises to the level of a force majeure event. Defendant presents deposition testimony from their representative who testified that it "rained for two weeks" and that strong winds caused the framing wall that Defendant built to collapse. (Rec. Doc. 53-10, at 22). Defendant also notes that DMG characterized the rainstorm as "severe weather." (Rec. Doc. 66, at 2).

The Court has doubts as to whether it truly rained for two weeks, as record evidence shows that it did not rain for most of the days that Defendant was onsite. (Rec. Doc. 53-8). Even if it did, Defendant offers insufficient evidence that this rain

6

was unusual, sudden, or unexpected. At least one Louisiana court recognizes that a rainstorm with strong winds in Southeast Louisiana is not a force majeure event. *Guy*, 262 So.3d at 331 (holding that a rainstorm with "gusty surface winds" was not a force majeure or act of God). Further, Plaintiff proffers evidence that the rain was foreseeable, as it advised Defendant that rain was coming, and tarps were needed to cover the property. (Rec. Doc. 53-2, at 2). DMG's characterization of the weather as severe, without more, is insufficient to establish that a force majeure event occurred. At trial, Defendant may prove that the rainstorm was so severe that it arose to the level of a force majeure event, but it does not carry its summary judgment burden. Accordingly, the Court finds that Defendant fails to prove the absence of any dispute of material fact as to whether the rainstorm at issue constituted a force majeure event.

The Court also finds a genuine factual dispute as to whether Defendant's own negligence contributed to the property damage at issue. Plaintiff's expert Brian O'Reilly explained that, as subcontractors on a residential project, Defendant owes a duty to comply with industry standards, which requires Defendant to prioritize constructing the exterior shell of the addition to avoid exposing the house to open weather conditions, monitor the weather, and "sequence work to avoid extended exposure of the unfinished shell to wind driven rain." (Rec. Doc. 64-9, at 4). O'Reilly concludes that Defendant breached that duty because it allowed extended periods of open exposure, failed to install a wind resistive barrier, left the first and second floor exposed, and relied exclusively on tarps. *Id.* at 5.

Plaintiff also argues that Defendant had a duty under the subcontract to start work on April 23, 2021, finish the project in seven days, and get the home addition "watertight." (Rec. Doc. 64, at 12). Plaintiff argues that Defendant failed to fulfill these duties under the subcontract and failed to comply with the requisite standard of care. *Id.*

Defendant does not dispute that it had a duty to comply with industry standards. Instead, Defendant argues that O'Reilly's report is not determinative of its negligence because it does not address key facts of the project, such as the project's timeline and the weather. (Rec. Doc. 66, at 5). Defendant also does not dispute that it had a contractual duty to timely start and finish the project, or that it had a duty to get the home addition watertight. Defendant only contends that its work was delayed during the project due to a lack of necessary material on site. *Id.* at 4.

The Court agrees with Plaintiff. Through O'Reilly's undisputed testimony, Plaintiff presents a strong argument that Defendant had a duty to do more than simply applying and reapplying a tarp to avoid water intrusion. Defendant fails to explain how the amount of time or the weather in this case absolves them from its duty to comply with industry standards. Defendant offers no contrary expert testimony, nor does it offer any evidence that it complied with industry standards.

Plaintiff also presents evidence that Defendant did not comply with the terms of the subcontract with DMG. The subcontract provides that Defendant was to begin work on April 23, 2021, with a project duration of seven days. (Rec. Doc. 64-3, at 1). Defendant had a duty under the subcontract to get the home addition "watertight"

within this time. *Id.* But Defendant: (1) did not begin work until April 26, 2021 (Rec. Doc, 52-2, at 2); (2) remained on the project for 23 days *Id.* at 3; and (3) failed to prevent water from entering the home. *Id.* at 1–4.

The Court is unwilling to find that Defendant's failure to comply with these contract terms did not contribute to the incident. The first rain did not occur until May 3, 2021, which provided Defendant 10 days from its hiring date to finish the project before the rain started, and it is possible that Defendant could have completed its scope of work, had it started promptly. Defendant argues that DMG's failure to provide materials caused project delays during the project (Rec. Doc. 66, at 4), but Plaintiff disputes that DMG was supposed to provide these materials (Rec. Doc. 64, at 14), and Defendant's lack of materials after starting the project does not explain why Defendant failed to start work promptly. The Court thus finds a genuine dispute of material fact as to whether Defendant was negligent, and whether Defendant's potential negligence may have contributed to the water damage at issue. Accordingly, the Court rejects both prongs of Defendant's force majeure defense.

## II.     Failure to Mitigate

Defendant next argues that it cannot be liable because DMG did not allow them to mitigate damages. (Rec. Doc. 53-1, at 11). Defendant contends that neighborhood security prevented it from repairing the tarp and covering the property on Sunday, May 9. *Id.* at 12–13.  Defendant also asserts that DMG prevented them from mitigating damages because DMG notified them that it found a replacement

roofing company and ultimately dismissed Defendant from the project on May 19, 2021. *Id.* at 14.

Plaintiff argues that DMG never blocked Defendant's access to the property. (Rec. Doc. 64, at 17). Plaintiff also questions whether neighborhood security ever blocked Defendant from repairing the tarp and covering the property. *Id.* Plaintiff argues that it notified Defendant that there were defects with its work and only removed Defendant from the project after providing a reasonable amount of time for Defendant to cure said defects. *Id.*

The Louisiana Supreme Court recognizes that the mitigation of damages doctrine applies in Louisiana. *Unverzagt v. Young Builders, Inc.*, 215 So.2d 823, 825 (La. 1968). Pursuant to this doctrine, DMG has a duty to take reasonable steps to mitigate damages. *Aisole v. Dean*, 574 So.2d 1248, 1253–54 (La. 1991). Defendant may raise a failure to mitigate damages as an affirmative defense. *Wooley v. Lucksinger*, 2011-0571 (La. 4/1/11), 61 So.3d 507, 607. The evidentiary burden is on Defendant when asserting failure to mitigate as an affirmative defense. *Washington v. Celadon Grp., Inc.*, No. 12-21, 2013 WL 5554273, at \*2 (M.D. La. Oct. 7, 2013).

The Court finds that Defendant fails to satisfy its evidentiary burden. Defendant presents no evidence that DMG ever blocked its access to the property. To the contrary, Plaintiff presents evidence that it asked Defendant on several occasions to travel to the property and mitigate damages. (Rec. Doc. 64-5, at 1). Defendant also fails to explain how DMG is responsible for neighborhood security allegedly removing

it on Sunday, May 9, or how this removal prevented Defendant from mitigating damages throughout the project's duration.

Defendant also fails to establish how DMG's May 11 notification that it found another roofing company prevented Defendant from mitigating damages. Following this notice, DMG provided Defendant an opportunity to repair the work until May 19, 2021, when DMG ultimately terminated the contract. (Rec. Doc. 53-2, at 3). Defendant had eight days to correct its work after receiving Plaintiff's notification, which is longer than the entirety of the original contract duration between DMG and Defendant. (Rec. Doc. 64-3, at 1). Defendant allegedly failed to correct the defects of its work during this time, and the Court does not find that Plaintiff acted unreasonably in seeking and hiring a replacement roofer to dry-in the property. Accordingly, the Court rejects Defendant's argument, and finds that there are genuine issues of material fact concerning whether DMG failed to mitigate damages.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion for Summary Judgment* **(Rec. Doc. 53)** is **DENIED.**

New Orleans, Louisiana, this 24th day of February, 2026.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE